# Ford *v.* Philadelphia & Reading Coal & Iron Co., Appellant.

*Negligence—Master and servant—Mines and mining—General labor in mine—Contributory negligence—Case for jury.*

In an action against a coal mining company to recover damages for personal injuries to a general laborer in the mine, the question of the defendant's negligence and plaintiff's contributory negligence are for the jury where the evidence tends to show that plaintiff by direction of the foreman went into an unlighted and dark tunnel in the mine to procure some wire from a place described as a safety hole; that he was unfamiliar with the part of the mine, and was not warned as to any danger; that at the point in the tunnel

·where the accident occurred there were two parallel tracks on one of which cars were carried down by gravity, and on the other the empty cars were run into the mine; that as plaintiff was standing with one foot on the empty car track in front of the safety hole he became aware of some cars approaching him on that track only six or eight feet away; that he fell back on the other track and was struck by a draught of loaded cars which threw him against other loaded cars at rest on the same track; that the draught cars approached without signal or lights; and that plaintiff could not hear them because of the operations of a pump close by.

In such a case the legal requirements in connection with surface railroad crossings do not apply.

*Negligence—Damages—Present worth rule—Pain and suffering.*
    In negligence cases involving personal injuries, the rule which requires the court to instruct the jury to allow the present worth of future damages, does not apply in awarding compensation for pain, suffering and inconvenience.

*Negligence—Excessive verdict—New trial—Discretion of court.*
    A judgment for plaintiff in an accident case will not be reversed because of the refusal of a new trial, where it is averred that the verdict of $11,686 was excessive, if no abuse of discretion is shown on the part of the lower court.

Argued Oct. 2, 1918. Appeal, No. 47, Jan. T., 1919, by defendant, from judgment of C. P. Northumberland Co., May T., 1915, No. 268, on verdict for plaintiff in case of Joseph Ford ·v. Philadelphia & Reading Coal & Iron Company. Before BROWN, C. J., STEWART, WALLING, SIMPSON and FOX, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before MOSER, J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $11,686. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (3) refusal of motion of defendant for a new trial; and (4) instructions that the rule as to

capitalization of future payments did not apply to pain and suffering.

*Voris Auten,* for appellant.

*J. A. Welsh,* with him *J. Fred Schaffer,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 4, 1919:

The injuries for which plaintiff sought to recover damages were sustained by him within a colliery owned and operated by the defendant company in which plaintiff was engaged as an employee, and was at the time in the line of his employment. The accident occurred at the bottom of what is known as No. 2 slope in the mine at a point where there are two tracks for the mine cars, one on which loaded cars are carried by gravity to the hoist at the "dish" or bottom of the slope whence they are carried to the surface and are there unloaded; the other was used for the return of the empty cars to the gangway where they were reloaded and returned to the hoist over their own proper track. These tracks crossed at the turnout which was a short distance above the place of accident, but at this point in the tunnel they were nearly parallel and but a few feet apart. On the side of the empty track a very short distance from the turnout, there was what is called a safety hole where the mules which had drawn the loaded cars from the mines to the gravity road were kept; a few feet beyond, on the other side, in a space prepared for it, there was a pumping station. It was on the loaded car track just in front of the safety hole that the accident occurred. It is admitted that the turnout at this point was unlighted, dark, and that those therein employed had no means of seeing about them except the ordinary miner's lamp with which they were provided. The inadequacy of these to protect one from danger under such circumstances as were here present was not seriously controverted. It does not appear that the plaintiff was employed as a miner. His place

of work was on a lower level in the mine and all we know of his duty is that, as one of a certain gang, his duty was "to do as he was told by his foreman." On the day of the accident he was ordered by his foreman to go up to level No. 2 and obtain from the foreman on that level in the safety hole some wire which was needed for some repair work. He testified that he had never been in this part of the mine but once or twice and then only at the manhole along the turnout where he was not directed to go. He received no instruction or warning from his foreman or any one as to the dangers of the place, but went as directed. Reaching the level he went to the safety hole, inquired for wire, but was told that there was none there and that the foreman was over on the other side at the pump house. He recrossed the car track, found the foreman who told him that the wire was over at the safety hole and where he could find it. He then again crossed over to get the wire, and while with one foot on the second or empty car track in front of the safety hole he suddenly became aware of the close approach of some empty cars returning by gravity when not more than six or eight feet from where he stood. He at once withdrew and fell back to the first track when he was instantly caught by a draught of loaded cars which threw him against several other loaded cars then at rest on the same track. This draught of cars approached without signal of any kind. The result was a very serious injury in consequence of which the plaintiff lost a limb by amputation. These are the facts developed by the plaintiff's testimony which was accepted by the jury. A verdict was returned for the plaintiff in the sum of $11,686. A motion for a new trial followed, also a motion for judgment n. o. v., both of which were refused.

The refusal of the motion for judgment non obstante is the first and principal assignment of error. Except as the court would have been warranted in giving binding instructions for the defendant, it could not have been error to refuse the motion. The negligence complained of is

stated in somewhat general terms, but no complaint is
made of disagreement between the allegations and the
proofs.  Somewhat condensed the averments are that
the defendant was negligent in failing to provide a rea-
sonably safe place for the plaintiff to work in; in failing
to instruct him as to the danger of which he was not cog-
nizant but which the defendant was bound to know; in
sending the draught of cars that struck the plaintiff and
occasioned his injury without having given signal or
warning.  These were the issues of fact.  We have stated
the actual conditions existing about this particular slope
in the mine in which the accident happened as they are
presented in the evidence, and there was no dispute as to
them.  That they were such as were attended with danger
which the defendant should have foreseen and appreci-
ated, however much disputed, was clearly a question
which the jury alone could decide.  The duty was on the
defendant to provide a reasonably safe place for the
plaintiff in which to do the work assigned him.

The same may be said with respect to the second ques-
tion: It is quite immaterial that the learned trial judge
placed larger emphasis on this feature of the case than we
think it required; but no exception was taken to his
charge on this subject and we perceive no distinct error in
what he said.  The third act of negligence complained of
was in not providing some signal or warning to be given
to anyone on the line of the gravity track of the approach
of the loaded cars on their way to the hoist.  The man
whose duty it was to place the loaded cars on the gravity
testified that the only alarm he was accustomed to give
on the starting of the cars was to call out to the chain
thrower at the bottom, if he was there, that he had no
other instruction in regard to it, and no signal lights
were used on the cars.  The plaintiff himself testified
that he neither saw nor heard the loaded cars approach
and could not hear their approach because of the noise
made by the pump then in operation close by.  It is quite
enough to say that here again the question of defendant's

negligence in this particular was for the jury.    Taking
into consideration the conditions present it was a
question for the jury to decide whether the defendant in
the operation of the mine had done all that reasonable
prudence required.    See, too, on the question of plaintiff's
contributory negligence which was urged in defense.
It is a mistake to suppose that legal requirements in
connection with surface railroad crossings apply to such
a case as this.    It may be as is contended that the plain-
tiff came short of that degree of care which the law re-
quires of one situated as he was, but the law has estab-
lished no fixed standard of duty in such cases, and it
therefore became a question for the jury under proper
instructions from the court.    The court's instruction on
this branch of the case are not assigned as error, and as
we read them were entirely correct.    The case as exhib-
ited in the evidence would not have warranted binding
instructions for the defendant.    The evidence adduced by
the plaintiff was entirely adequate to warrant a submis-
sion to the jury of both questions, the negligence of the
defendant and the contributory negligence of the plain-
tiff.

Another specification of error relates to so much of the
court's charge as instructs with respect to the capitali-
zation of future payments.    The instruction was as fol-
lows: "The rule that future payments are to be capital-
ized, that only the present worth of future payments,
may be awarded, does not apply to pain and suffering
and inconvenience that you find the plaintiff might suf-
fer by reason of the injury."    In the very recent case of
Bostwick v. Pittsburgh R. R. Co., 255 Pa. 387, this court
speaking through Mr. Justice WALLING said: "In the ab-
sence of precedent, we will not extend the rule which re-
quires the court to instruct juries to allow only the pres-
ent worth of future damages so as to include the element
of pain, suffering and inconvenience."    This was ample
authority for the instruction complained of.    Still an-
other assignment complains of the action of the court in

refusing a new trial on the ground of excessive damages. This was a matter addressed to the discretion of the court that tried the case. The learned trial judge on review of the case could discover no oppression or injustice in the verdict, nor can we.

All the assignments of error are overruled and the judgment is affirmed.